UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QLAY CO.,

                              Plaintiff,

        v.

AMBROSIA OWEN, et al.,

                              Defendants.

21-CV-1784 (JLR) (VF)

**REPORT & RECOMMENDATION**

**VALERIE FIGUEREDO,** United States Magistrate Judge

**TO: THE HONORABLE JENNIFER L. ROCHON,** United States District Judge.

## INTRODUCTION

On March 2, 2021, Plaintiff Qlay Co. ("Qlay") commenced this action asserting

claims against 74 Defendants for trademark counterfeiting, trademark infringement, and

false designation of origin, passing off and unfair competition under the Lanham Act, as

well as unfair competition under New York law.[1] See ECF No. 8 ("Compl.") at ¶¶ 44-82.

To date, 60 remaining Defendants ("Defaulting Defendants") have not appeared or had the

---

[1] The 74 Defendants were: Ambrosia Owen, an11gwayash, Angela Rose, Angelayy, anrpsh, BERICHER Again Again, bgh7, bounetwdthga, chenbohuan2418, chenmingzhen1989, Cheryl Klein, Clothing men's women's maternal and infant stores, Costume rider, Courtney Steele, csfiusyfisdf, Dorothyxs, Earl Vaughan, Earnestyy, Fkdmtjsoie589345, Galexl, gexiaoting85785, gftydsetgv, HanYongMaoYi, hezhenxi1234, huchunyang4578, Ian Blackman, Jessemgl, jiangcheng780, Kmzka, liangchangmi147258, limengkun, liping870624, liqian1994, liyuanli6666, lvchao88988, Manueltt, mayanning274324, Maynardko, Ming Xiao8869, Minhuiing coats, mmxhnly, msifj, NNbupShop, OH MY GODNESS, Patriciayy, pengpenger, Qinmeicheng0216, ruifs, rutherfordcornelia7, Sad dimension 520 Watch, shili1426, shiyan55667, suyuqi0188, Suzette, Tee PKL, Tim Daly, tingting65892345, tryh~6677, wangbing556, wangmiib, wangyiling123, wangyuyan1234, WilliamBerry, wuduilingtao, Wuyuan123, wuzongxin66885, xiangyuanwei, xiaotianxipu, xinpianzhang, Zachariahmk, zhang2010, zhangerpeng11, zhangsungong32019 and zhangxinran60. See ECF No. 8 at Glossary.

claims against them dismissed. For the reasons set forth below, I respectfully recommend that Qlay be awarded damages under the Lanham Act in the amount of $3,000,000 plus post-judgment interest.

## BACKGROUND

### A. Factual Background

Qlay operates a YouTube channel with 13.1 million subscribers starring Chad Wild Clay ("CWC") and featuring "action, adventure and mystery videos" for children and their parents. Compl. ¶ 7. In conjunction with the YouTube channel, Qlay has developed a mobile game and a line of toys sold at Target and other retailers, as well as a variety of consumer products such as t-shirts, hoodies, and backpacks sold through an online website. Id. at ¶¶ 8-9. In March 2020, Qlay obtained a federal trademark registration for its "CWC Mark" as it relates to its CWC line of products. Id. at ¶¶ 11-12; ECF No. 8-2. The CWC Mark is currently in use in commerce in connection with CWC products. Compl. ¶ 13. All CWC products bear the "wildly popular" CWC design mark. Id. at ¶ 9.

Defendants are a group of "merchants" who operate accounts on Wish, an online marketplace and e-commerce platform that allows manufacturers, wholesalers, and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell, and ship their products directly to consumers in the United States. Id. at ¶¶ 6, 20, 23, 26. A majority of third-party merchants that have storefronts on Wish, including Defendants, are located in China. Id. at ¶ 21. Through their merchant storefronts on Wish, Defendants offer for sale, without Qlay's authorization, consumer products that are counterfeit, or that use the CWC Mark or a mark that is confusingly similar to the CWC Mark. Id. at ¶¶ 26, 29-31.

Defendants' counterfeit products are "nearly indistinguishable from" Qlay's CWC products. Id. at ¶¶ 32, 35-37. Defendants offer for sale and/or sell their counterfeit products to customers located in New York, because they provide shipping to addresses located in New York. Id. at ¶¶ 33-35.

    **B. <u>Procedural Background</u>**

On March 2, 2021, Qlay filed the instant action against Defendants asserting four causes of action: (1) trademark counterfeiting under the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), 1117(b)-(c); (2) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (3) false designation of origin, passing off, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); and (4) unfair competition under New York law. Id. at ¶¶ 44-82. Qlay also moved *ex parte* for an order to seal, a temporary restraining order ("TRO") halting any further sale of Defendants' counterfeit products, an order restraining Defendants' assets with financial institutions and their merchant storefronts, an order to show cause why a preliminary injunction should not issue, an order authorizing bifurcated and alternative service, and an order authorizing expedited discovery. ECF Nos. 12-14. On March 19, 2021, the Honorable Vernon S. Broderick granted Qlay's *ex parte* applications and entered a TRO enjoining Defendants from continuing to sell counterfeit Qlay products on Wish. <u>See</u> ECF No. 4 at 1.

On March 25, 2021, pursuant to the alternative methods of service authorized by the Court, Qlay "served the Summons, Complaint, TRO and all papers filed in support of the Application on each and every Defendant, except Defendant ruifs, who was subsequently served on April 8, 2021." <u>See</u> ECF No. 21 at No. 6. On April 6, 2021, Judge Broderick extended the TRO to April 16, 2021, and directed the parties to appear at a

hearing on April 16, 2021, to discuss Qlay's application for a preliminary injunction. ECF No. 4 at 1. No Defendant appeared at the hearing. ECF No. 20 at 3.

On April 16, 2021, Qlay moved under Federal Rule of Civil Procedure 41 for voluntary dismissal without prejudice of all claims against 13 Defendants.[2] See ECF Nos. 17, 19. On April 17, 2021, the Court ordered that ten of the 13 Defendants be dismissed without prejudice because Qlay failed to effectuate adequate service, and an additional three be dismissed without prejudice, as Qlay could not show that they ever offered infringing items for sale. ECF No. 20 at 2. As to the remaining 61 Defendants, Judge Broderick extended the injunctive relief previously granted in the TRO, requiring that it "remain in place through the pendency of this litigation." Id. at 3.

On May 12, 2021, Qlay moved for the entry of default against the 61 remaining Defendants. ECF Nos. 28, 29. That same day, the Clerk of Court entered a Certificate of Default against the 61 remaining Defendants. ECF No. 30.

On May 24, 2021, Qlay filed a Motion for Default Judgment and a Permanent Injunction against the 61 remaining Defendants. ECF Nos. 31-33. On July 8, 2021, following a show cause hearing, Qlay moved to dismiss all claims against Defendant hezhenxi1234. ECF Nos. 35, 40. On July 12, 2021, Judge Broderick entered a default judgment as to liability against the 60 Defaulting Defendants.[3] ECF No. 44.

---

[2] Those 13 defendants are: Angela Rose, Angelayy, Earnestyy, Galexl, Ian Blackman, Maynardko, msifj, rutherfordcornelia7, WilliamBerry, Zachariahmk (see ECF No. 17) and an11gqayash, anrpsh, and Patriciayy (see ECF No. 19).

[3] The Defaulting Defendants are: Amrosia Owen; BERICHER Again Again, bgh7, bounetwdthga, chenbohuan2418, chenmingzhen1989, Cheryl Klein, Clothing men's women's maternal and infant stores, Costume rider, Courtney Steele, csfiusyfisdf, Dorothyxs, Earl Vaughan, Fkdmtjsoie589345, gexiaoting85785, gftydsetgv, HanYongMaoYi, huchunyang4578, Jessemgl, jiangcheng780, Kmzka, liangchangmi147258, limengkun, liping870624, liqian1994,

The Court subsequently referred this case to Magistrate Judge Debra Freeman for an inquest on damages.[4] See ECF No. 45. On September 27, 2021, the Court directed Qlay to submit Proposed Findings of Fact and Conclusions of Law in support of an award of damages. See, ECF No. 46 at 2. Qlay filed its Proposed Findings of Fact and Conclusions of Law on October 26, 2021. See ECF No. 47. Qlay also filed proof of service of its Proposed Findings of Fact on the Defaulting Defendants. See ECF No. 50. The Defaulting Defendants were given until November 30, 2021, to submit a response. See ECF No. 46 at 2. The Defaulting Defendants failed to provide any response to Qlay's submission. To date, none of the Defaulting Defendants have appeared or otherwise participated in this action.

## DISCUSSION

### A. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure governs judgments against a party that has failed to plead or otherwise defend itself in an action. Au Bon Pain Corp. v. Artect, Inc., 653 F.3d 61, 65-66 (2d Cir. 1981). Rule 55 requires a two-step process for an entry of a default judgment. See Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d Cir. 2011) (per curiam); Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 392-93 (S.D.N.Y. 2012). First, upon notification from the moving party, the Clerk of Court enters the default of the party failing to plead or otherwise defend the moving party's suit. See Priestley, 647 F.3d at 504-05

---

liyuanli6666, lvchao88988, Manueltt, mayanning274324, Ming Xiao8869, Minhuiing coats, mmxhnly, NNbupShop, OH MY GODNESS, pengpenger, Qinmeicheng0216, ruifs, Sad dimension 520 Watch, shili1426, shiyan55667, suyuqi0188, Suzette, Tee PKL, Tim Daly, tingting65892345, tryh~6677, wangbing556, wangmiib, wangyiling123, wangyuyan1234, wuduilingtao, Wuyuan123, wuzongxin66885, xiangyuanwei, xiaotianxipu, xinpianzhang, zhang2010, zhangerpeng11, zhangsungong32019, and zhangxianran60. See ECF No. 44 at 1.

[4] On April 30, 2022, the matter was redesignated to the undersigned. See Minute Entry dated 4/30/2022.

(citing Fed. R. Civ. P. 55(a)). Second, once the clerk issues a certificate of default, the moving

party may apply for the entry of a default judgment pursuant to Rule 55(b). Id. at 505.

A default constitutes an admission of all well-pled factual allegations in the complaint.

Thus, a plaintiff's allegations in the complaint, as they pertain to liability, are deemed true. See

Finkel, 577 F.3d at 88 n.6 (noting that an entry of default establishes liability but does not

constitute an admission of damages); Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993) (explaining

that "factual allegations are taken as true in light of the general default judgment"); Union of

Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC, 665 F. Supp. 3d 434, 436

(S.D.N.Y. 2009) (internal quotation marks and citation omitted). However, a plaintiff is not

entitled to a default judgment as a matter of right merely because the opposing party is in default.

See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry

& Const., LLC, 779 F.3d 182, 187 (2d Cir. 2015). A plaintiff bears the burden of demonstrating

that their uncontroverted allegations are sufficient to establish a defendant's liability as to each

cause of action. Id.; see also Morales v. Mw Bronx, Inc., No. 15-CV-6296 (TPG), 2016 WL

4084159, at *4 (S.D.N.Y. Aug. 1, 2016) (collecting cases). As to damages, Federal Rule of Civil

Procedure 55(b)(2) "allows but does not require" the district court to conduct a hearing on the

damages amount. Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund, 779

F.3d at 189 ("[T]he court may conduct such hearings or order such references as it deems

necessary and proper.") (internal quotation marks and citation omitted); see also Cement &

Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230,

234 (2d Cir. 2012).

Although Judge Broderick granted Qlay's motion for default judgment with respect to all

their claims against the Defaulting Defendants, the Court must nevertheless assess whether the

allegations in the complaint establish the elements of each claim for which Qlay seeks damages. Additionally, although well-pleaded allegations as to liability are deemed admitted by a defaulting defendant, the same is not true for damages. See Union of Orthodox Jewish Congregations of Am., 665 F. Supp. 3d at 436 ("When the Court enters a default judgment, as regards liability it must accept as true all of the factual allegations of the complaint, but the amount of damages are not deemed true.") (internal citation and quotation marks omitted). Qlay bears the burden of establishing an evidentiary basis for the damages sought against the Defaulting Defendants. See Bricklayers & Allied Craftworkers Local 2, Albany N.Y. Pension Fund, 799 F.3d at 189; Int'l Ass'n of Heat & Frost Insulators v. Affiliated Envtl. Servs. NJ, Inc., No. 15-CV-6909 (LTS), 2017 WL 5153565, at *5 (S.D.N.Y. Nov. 6, 2017). Furthermore, "[w]here a plaintiff seeks damages on the theory that each individual acting alone infringed a work, rather than joint and severally, a court must assess damages with respect to each individual defendant such that the rights of the Defaulting Defendants are not compromised by the virtue of their being joined in the same action." Spin Master Ltd. v. 158, 463 F. Supp. 3d 348, 361 (S.D.N.Y. 2020), adhered to in part on reconsideration by, No. 18-cv-01774 (LJL), 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020) (citation omitted).

Here, Qlay's submissions have not been contested, and the submissions provide all the information needed to determine damages. As such, a hearing on damages is not necessary.

### B. Personal Jurisdiction

As a preliminary matter, it is necessary to determine whether the Court has personal jurisdiction over the Defaulting Defendants. Although the Court exercised personal jurisdiction over the Defaulting Defendants when it issued the TRO and the preliminary injunction, "it is appropriate for the Court to assure itself that it has personal jurisdiction over those defendants it

purports to bind indefinitely" by issuance of a default judgment. Spin Master Ltd., 463 F. Supp. 3d at 361 (citing Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010)).

In cases raising a federal claim, where the statute does not provide for nationwide service, the personal jurisdiction rules of the forum state apply. See, e.g., Schentag v. Nebgen, No. 17-CV-08734 (GHW), 2018 WL 3104092, at *15 (S.D.N.Y. June 21, 2018) (citing PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997)). New York's personal jurisdiction rules apply here because the Lanham Act does not provide for nationwide service. Alibaba Grp. Holding Ltd. v. Alibabacoin Foundation, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *6 (S.D.N.Y. Apr. 30, 2018).

In New York, to determine whether there is personal jurisdiction over a non-domiciliary in a trademark or copyright case, a court engages in a two-step analysis. Spin Master Ltd., 463 F. Supp. 3d at 362. At step one, the court applies New York's long-arm statute, and at step two, which takes place only if the long-arm statute permits personal jurisdiction, the court analyzes "whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010); accord Spin Master Ltd., 463 F. Supp. 3d at 362.

Qlay asserts that there is personal jurisdiction over each of the Defaulting Defendants pursuant to C.P.L.R. § 302(a)(1) and (a)(3). See Compl. ¶ 3. Under C.P.L.R. § 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." Two requirements must be met to establish personal jurisdiction under § 302(a)(1): "(1) [t]he defendant must have transacted business within the state; and (2) the claim

asserted must arise from that business activity." Eades v. Kennedy, PC Law Offs., 799 F.3d 161,

168 (2d Cir. 2015) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161,

168 (2d Cir. 2013)).

A foreign defendant, like the Defaulting Defendants here, does not need to be physically

present in the forum state, but rather must engage in a "purposeful activity" through which the

foreign defendant "purposefully avail[s] [themself] of the privilege of conducting activities

within the forum State, thus invoking the benefits and protections of its laws." Spin Master Ltd.,

463 F. Supp. 3d at 362 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). A "'single act'

of selling counterfeit goods into New York satisfies" [C.P.L.R.] § 302(a)(1). Chloe, 616 F.3d at

170. Additionally, a "website's interactivity may be useful for analyzing personal jurisdiction

insofar as it helps to decide whether the defendant transacts any business in New York" under

§ 302(a)(1). Id. (citing Best Van Lines, Inc. v. Walker, 490 F.3d 239, 252 (2d Cir. 2007))

(internal quotation marks omitted).

As alleged in the complaint, the Defaulting Defendants used Wish's e-commerce

platform to sell counterfeit Qlay products to consumers in New York. See Compl. ¶¶ 25-26, 30-

40. The complaint alleges that the Defaulting Defendants were selling, or attempting to sell,

counterfeit Qlay products on their Wish Merchant Storefronts to consumers in New York. See id.

at ¶¶ 3.a., 3.c., 3.d., 33-34. Qlay substantiated this allegation by submitting at least three

documents for each Defaulting Defendant: (1) a screenshot of the infringing listing for each

Defaulting Defendant, which displayed a particular counterfeit Qlay product; (2) a screenshot of

the Defaulting Defendant's storefront; and (3) a photograph of the checkout page for the

counterfeit Qlay product, showing confirmation that the product can be shipped to the New York

address of Plaintiffs' counsel. See, e.g., Compl. ¶ 33; ECF No. 8-3 at 1-7. These screenshots

from Wish's website ties each Defaulting Defendant to a specific counterfeit Qlay product and to the attempted sale of that counterfeit product to a consumer in New York. Compl. ¶ 33.

By making proposed online sales to consumers with shipping addresses in New York, the Defaulting Defendants "transacted business" in New York in a way that constitutes "purposeful availment" for purposes of establishing personal jurisdiction under § 302(a)(1). Spin Master Ltd., 463 F. Supp. 3d at 436; see also Off-White LLC v. 5HK5584, No. 19-CV-00672 (RA) (JLC), 2020 WL 1646692, at *4 (S.D.N.Y. Apr. 3, 2020), report and recommendation adopted by, 2020 WL 3050552 (S.D.N.Y. June 8, 2020) (establishing personal jurisdiction over foreign defaulting defendants where New York consumers could order goods on eBay for delivery in New York); Off-White v. Ali Jr., No. 19-CV-1775 (PAE) (SN), 2021 WL 11643206, at *5-6 (S.D.N.Y. July 23, 2021), report and recommendation adopted by, 2021 WL 3914077 (S.D.N.Y. Sept. 1, 2021) (establishing personal jurisdiction over foreign defaulting defendants where consumers through website could order goods for delivery in New York); Off-White LLC v. Baoding Springru Trade Co. Ltd., No. 19-cv-00674 (RA) (JLC), 2020 WL 1646602, at *4 (S.D.N.Y. Apr. 3, 2020) report and recommendation adopted by, 2020 WL 3050553 (S.D.N.Y. June 8, 2020) (finding personal jurisdiction over foreign defendants selling counterfeit products to New York consumers on Alibaba.com). The first element of § 302(a)(1) is thus satisfied.

The second prong of C.P.L.R. § 302(a)(1) is also met here. That prong requires an "articulable nexus or substantial relationship between the business transaction and the claim asserted." Gucci Am., Inc. v. Weixing Li, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (quotation and emphasis omitted). Here, the Defaulting Defendants offer counterfeit products for sale to individuals in New York through their Wish storefronts. See ECF No. 8-3. That business transaction has a substantial relationship with the Latham Act trademark claims asserted in this

action. See Spin Master Ltd., 463 F. Supp. 3d at 364 (concluding that the offer for sale of counterfeit products online has a substantial relationship with a claim of trademark infringement under the Lanham Act); Ali Jr., 2021 WL 11643206, at *6 (concluding that the offer or sale of counterfeit products online has an articulable nexus to the claim asserted because the sale of infringed trademarks is prohibited under the Lanham Act). The Court thus has personal jurisdiction over the Defaulting Defendants under C.P.L.R. § 302(a)(1).

### C. **Liability**

Qlay seeks damages only in connection with its trademark counterfeiting and infringement claims in Counts I and II of the complaint. See ECF No. 47 at ¶¶ 31-33. Therefore, "the Court considers the Defaulting Defendants' liability as to their violation of the Lanham Act alone." 5HK5584, 2020 WL 1646692, at *4; see also Coach Servs., Inc. v. K Ya Int'l Inc., No. 09-CV-4656 (RMB) (JCF), 2010 WL 2771897, at *2 (S.D.N.Y. June 10, 2010) ("In connection with this inquest, the plaintiff has requested damages only for trademark infringements in violation of the Lanham Act, and therefore liability need only be considered with respect to that claim") report and recommendation adopted by, 2010 WL 2771907 (S.D.N.Y. July 12, 2010).

The Lanham Act imposes liability on any person who, in connection with the sale, offering for sale, or distribution of a good, either uses a counterfeit of a registered mark or counterfeits such mark in advertising or packaging materials when such use or counterfeiting is likely to cause confusion. 15 U.S.C. § 1114(1)(a)-(b); Allstar Marketing Grp., LLC v. 123 Beads Store, No. 19-CV-3184 (AJN), 2020 WL 5836423, at *3 (S.D.N.Y. Sept. 30, 2020). To prevail on a trademark counterfeiting or infringement claim, a plaintiff must establish that the infringed mark is valid and "entitled to protection," and that "use of the allegedly infringing mark 'is likely to cause consumer confusion as to the origin or sponsorship' of the products to which it

11

attached." Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 168 (2d Cir. 2016) (quoting Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003)). A certificate of registration with the Patent and Trademark Office "is prima facie evidence that the mark is registered and valid (i.e. protectible)[.]" Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999). Additionally, a plaintiff can establish consumer confusion through the factors laid out in Polaroid v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). However, a court "need not undertake a factor-by-factor analysis under Polaroid" in the case of counterfeits "because counterfeits, by their very nature, cause confusion." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); see also Coach, Inc. v. Horizon Trading USA, Inc., 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012); Spin Master, Ltd., 463 F. Supp. 3d at 368. The Lanham Act defines "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Qlay has established both elements of a trademark counterfeiting and infringement claim as to the Defaulting Defendants. First, Qlay alleges that it is the owner of U.S. Trademark Registration No. 6,012,760 for the "CWC Mark" in a variety of goods that are currently in use in commerce in connection with the CWC products. See Compl. ¶¶ 12-13. Qlay attached a copy of the U.S. Patent and Trademark Office's registration certificate for the CWC Mark to its complaint. See ECF No. 8-2. "A certificate of registration with the Patent and Trademark Office is prima facie evidence that the mark is registered and valid (i.e., protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." Coach, Inc., 908 F. Supp. 3d at 433 (quoting Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999)).

Second, Qlay has established that the marks on the counterfeit products sold by the

Defaulting Defendants are likely to cause confusion because they are demonstrably counterfeit. As an initial matter, counterfeit products, by their nature, are likely to cause confusion. See e.g., BTL Industries, Inc. v. Versalini Beauty & Spa Salon, No. 23-CV-8617 (LJL), 2024 WL 3342293, at *4-5 (S.D.N.Y. July 8, 2024); Kelly Toys Holdings, LLC v. Airpods Pro Store, No. 21-CV-8435 (LJL), 2022 WL 2801077, at *4 (S.D.N.Y. July 18, 2022). Here, Qlay alleges that the Defaulting Defendants are offering for sale and/or selling on Wish counterfeit products bearing the CWC Mark. Compl. ¶¶ 31-53. Moreover, the complaint includes side-by-side images of a Qlay product and the counterfeit CWC product that is offered for sale by each of the Defaulting Defendants. See ECF Nos. 8-3, 8-4, 8-5. The examples of the counterfeit products bear a mark that is "confusingly similar" to the CWC Mark. See, e.g., Compl. ¶¶ 35-37; see also ECF Nos. 8-3, 8-4, 8-5. Accepting Qlay's allegations in the complaint as true, the counterfeit products offered for sale by the Defaulting Defendants are "virtually identical to one of [Qlay's] products and incorporate copies or colorable imitations of marks on their product packaging." WowWee Grp. Ltd. v. Meirly, No. 18-CV-706 (AJN), 2019 WL 1375470, at *7 (S.D.N.Y. Mar. 27, 2019). As such, Qlay has established its trademark counterfeiting and infringement claims against the Defaulting Defendants in Counts I and II of the complaint. Default judgment as to those claims is thus warranted.

### D.  **Damages**

#### 1. Statutory Damages

Qlay seeks statutory damages totaling $3,000,000, or $50,000 for each of the 60 Defaulting Defendants. ECF No. 47 at Conclusion. Plaintiff seeks only statutory damages because, due to the Defaulting Defendants' failure to appear in this case, Plaintiff has been "deprived of the ability to prove a specific amount of actual damages." Id. at ¶ 32.

Under the Lanham Act, at any time before final judgment is entered, a trademark owner may elect to recover an award of statutory damages, rather than actual damages, in cases of infringement. 15 U.S.C. § 1117(c)-(d); see also Ali Jr., 2021 WL 11643206, at *8. For the use of a counterfeit mark, a court may award statutory damages in the amount of: (1) "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," or (2) if the use of the counterfeit mark is found to be willful, up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c); see also All-Star Mktg. Grp., LLC v. Media Brands Co., Ltd., 775 F. Supp. 3d 613, 620-21 (S.D.N.Y. 2011) ("The rationale for § 1117(c) is the practical inability to determine profits or sales made by counterfeiters.").

Although 15 U.S.C. § 1117(c) instructs courts to award a "just" amount and establishes a cap on the award, it "does not provide guidelines for courts to use in determining an appropriate award as it is only limited by what the court considers just." Gucci Am., 315 F. Supp. 2d at 520 (internal citation and quotation marks omitted). Accordingly, "courts in this District have looked to the analogous provision in the Copyright Act for guidance, 17 U.S.C. § 504(c), and have considered" the following factors in determining an appropriate amount of statutory damages: (1) "the expenses saved and the profits reaped"; (2) "the revenues lost by the plaintiff"; (3) "the value of the copyright"; (4) "the deterrent effect on others besides the defendant"; (5) "whether the defendant's conduct was innocent or willful"; (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced"; and (7) "the potential for discouraging the defendant." Ali Jr., 2020 WL 1646692, at *6 (citing Philip Morris USA Inc. v. A&V Minimarket, Inc., 592 F. Supp. 2d 669, 673 (S.D.N.Y. 2009)). A

court has broad discretion to balance the factors in determining an appropriate statutory damages award. Louis Vuitton Malletier S.A. v. LY USA, Inc., 472 F. App'x 19, 22 (2d Cir. 2012) ("Within these statutory limits courts have considerably broad discretion to balance the punitive, deterrent function of an award against the direction that it not constitute a windfall for prevailing plaintiffs.") (internal quotation marks and citation omitted).

The analysis of the first and second factors is identical for all Defaulting Defendants and both factors weigh in favor of Qlay. The full extent of the profits reaped by the Defaulting Defendants and the revenue lost by Qlay as a result of the infringing activity of each Defaulting Defendant is unknown. ECF No. 47 at ¶¶ 29-32. As a result of the failure of each defendant to appear, Qlay was "deprived of the ability to prove a specific amount of actual damages." Id. at ¶ 32. The effect of the default is that the Defaulting Defendants have not responded to the evidence of counterfeit sales with evidence of their own, such as expenses incurred that might reduce a damages award. See Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d 161, 168-69 (S.D.N.Y. 1999); see also Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973 (2d Cir. 1985) ("Where the defendants fail to produce evidence to refute plaintiffs' evidence of defendants' sales of counterfeit products, the court must rely on less certain methods of proof.") (citation omitted). In situations such as this, courts generally "resolve[] any uncertainty" in favor of the plaintiff with respect to the first two factors "so as not to allow the Defaulting Defendants to benefit from their lack of participation in this litigation." Ideavillage Products Corp. v. Aarhus, No. 18-CV-02739 (JGK) (SDA), 2019 WL 2290514, at *7 (S.D.N.Y. May 7, 2019), report and recommendation adopted by, 2019 WL 2287726 (S.D.N.Y. May 28, 2019).

The third factor—which examines the value of the trademark—also weighs in favor of Qlay. Qlay has not submitted evidence supporting a particular monetary value for its trademark.

However, courts can "infer from the well-known reputations of most or all of the trademarks and the sea of advertising that presses them on the consciousness of the buying public that they are indeed valuable." <u>Polo Ralph Lauren v. 3M Trading Co.</u>, No. 97-CV-4824 (JSM) (MH), 1999 WL 33740332, at *6 (S.D.N.Y. Apr. 19, 1999). Here, the evidence shows that the Qlay trademark carries that value. As of the time of the filing of this complaint, the Chad Wild Clay YouTube Channel had 13.1 million subscribers and surpassed 4 billion views. Compl. ¶ 7. Qlay sells a wide range of products bearing its CWC design mark, including mobile games, clothing, and toys. <u>Id.</u> at ¶¶ 8-9. These sales are made through Qlay's online store, and through sales at large retailers like Target, Walmart, and Amazon. <u>Id.</u> Additionally, Qlay has put considerable effort into marketing and promotional efforts related to these products, utilizing both internet-based and print advertising. <u>Id.</u> at ¶ 14. Qlay's products therefore enjoy a "valuable reputation and goodwill among the public as a result of" Qlay's "efforts, the quality of the CWC Products, the popularity of the CWC Content and the word-of-mouth buzz generated by its consumers." <u>Id.</u> at ¶ 17.

The fourth factor examines the scale of the Defaulting Defendants' infringement. The scale of infringement is greatly heightened in the case of online counterfeiting, because "online marketplaces like Wish provide a 'virtually limitless number of customers' for the counterfeit products." <u>Spin Master Ltd.</u>, 463 F. Supp. 3d at 373 (quoting <u>Streamlight Inc. v. Gindi</u>, No. 18-CV-987 (NG), 2019 WL 6733022, at *13 (E.D.N.Y. Oct. 1, 2019), <u>report and recommendation adopted by</u>, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019)); <u>see</u> <u>Rolex Watch, U.S.A., Inc. v. Pharel</u>, No. 9-CV-4810 (RRM) (ALC), 2011 WL 1131401, at *5 (E.D.N.Y. Mar. 11, 2011), <u>report and recommendation adopted by</u>, 2011 WL 1130457 (E.D.N.Y. Mar. 28, 2011) (finding that the use of three websites by defendants to sell counterfeit products counseled in favor of the

fourth factor). "'Courts have supported an inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range,'" such as the Wish platform here which the Defaulting Defendants used to offer their counterfeit products for sale to customers worldwide. WowWee Grp. Ltd., 2019 WL 1375470, at *10 (quoting Spin Master, 325 F. Supp. 3d at 426). The fact that these sales occurred on such a website, that permits for sales nationwide, combined with the general "need to deter other possible infringers," ultimately weighs in favor of an award to Qlay. WowWee Grp. Ltd., 2019 WL 1375470, at *10.

The fifth factor—willfulness—also weighs in favor of Qlay. "An infringement is willful where the defendant had knowledge or recklessly disregarded the possibility that its actions constituted infringement." Spin Master Ltd. 463 F. Supp. 3d at 374 (quoting Streamlight, 2019 WL 6733022, at *13.) Because the Defaulting Defendants have defaulted, their infringement is "*per se* willful." Ali Jr., 2021 WL 11643206, at *9 (citing 7-Eleven, Inc. v. Z-Eleven Convenience Store, Inc. No. 16-CV-4116 (RRM) (SJB), 2018 WL 1521859, at *8 (E.D.N.Y. Jan. 17, 2018)). In addition, the "use of marks that are 'virtually identical' to the registered marks renders 'inescapable' the conclusion that the defendant's infringement and counterfeiting was intentional." WowWee Grp., 2019 WL 1375470, at *10 (citing Coach, Inc. v. Melendez, No. 10-CV-6178 (BSJ) (HSP), 2011 4542971, at *5 (S.D.N.Y. Sept. 2, 2011), report and recommendation adopted by, 2011 WL 4542717 (S.D.N.Y. Sept. 30, 2011)). As discussed, the marks on the counterfeit products at issue here are virtually indistinguishable from the CWC Mark. See Compl. ¶¶ 35-37. This factor therefore weighs in Qlay's favor with respect to each of the Defaulting Defendants.

The sixth factor measures the degree of cooperation by the Defaulting Defendants. Some courts look to whether the defendant has engaged in an "[a]ctive effort to mislead the court about

continued willful counterfeiting," which "is a traditional aggravating factor in statutory

damages." <u>Sara Lee</u>, 36 F. Supp. 2d at 168. Other courts have "construe[d] this element against

defendants who fail to answer or appear, thus preventing the exchange of comprehensive

discovery." <u>Streamlight</u>, 2019 WL 6733022, at *14. In general, "it is more appropriate to look to

whether the defendant has engaged in an effort to conceal the fact or scale of its wrongdoing or

to mislead the plaintiff or the court about the existence or scale of counterfeiting." <u>Kelly Toys</u>

<u>Holdings, LLC</u>, 2022 WL 2801077, at *7 (citing <u>Spin Master</u>, 463 F Supp. 3d at 374). In this

case, the factor of "cooperation is neutral." <u>Kelly Toys Holdings, LLC</u>, 2022 WL 2801077, at *7.

Qlay alleges that "Defendants are in constant communication with each other and regularly

participate in online chatroom discussions involving illegal counterfeiting activities, pending

litigation and potential new lawsuits." Compl. ¶ 28. This allegation, however, does not

demonstrate that "Defendants took active steps to conceal their identities or to avoid detection,

nor have [Plaintiffs] presented evidence (including in the form of an expert affidavit) that would

support that conclusion." <u>Kelly Toys Holdings, LLC</u>, 2022 WL 2801077, at *7. On the current

record, this factor does not support a heightened damages award for Qlay. <u>See</u> <u>Ali Jr.</u>, 2021 WL

11643206, at *10.

     The seventh and final factor is the potential for deterring the Defaulting Defendants. <u>See</u>

<u>Tiffany (NJ) Inc. v. Luban</u>, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003); <u>see also</u> <u>Bumble and</u>

<u>Bumble, LLC v. Pro's Choice Beauty Care, Inc.</u>, No. 14-CV-6911 (VEC) (JLC), 2016 WL

658310, at *5 (S.D.N.Y. Feb. 17, 2016), <u>report and recommendation adopted by</u>, 2016 WL

1717215 (S.D.N.Y. Apr. 27, 2016) (explaining that an award of statutory damages will serve as a

"specific deterrent" to the defendants as well as "general deterrent to others who might consider

engaging in infringing conduct in the future"). This factor considers the need for deterrence and

the nature of the defendant's conduct. Ali Jr., 2021 WL 11643206, at *10. With counterfeit goods, such as the goods at issue here, the "need to deter. . . is particularly compelling." Bumble and Bumble, LLC, 2016 WL 658310, at *5. The Defaulting Defendants have used a mark on their products that is identical if not substantially indistinguishable to the CWC Mark. Compl. at ¶¶ 35-37. This factor therefore also weighs in Qlay's favor. See Moonbug Entm't Ltd. v. All Night Revelry Store, No. 21-CV-10315 (LGS)(JLC), 2023 WL 116565, at *6 (S.D.N.Y. Jan. 6, 2023), report and recommendation adopted by, 2023 WL 1402072 (S.D.N.Y. Jan. 31, 2023) (finding this factor in plaintiff's favor where defaulting defendants engaged in willful counterfeiting).

As discussed above, Qlay seeks statutory damages under the Lanham Act of $50,000 for each Defaulting Defendant. Courts in this Circuit "regularly award statutory damages in the realm of up to $50,000 as amounts that both account for a defendant's willful disregard of trademark laws and as a deterrent to others who might consider engaging in infringing conduct in the future." Stark Carpet Co. v. Stark Carpet & Flooring Installations, Co., 954 F. Supp. 3d 145, 155 (E.D.N.Y. 2013) (collecting cases); see also Cartier Int'l B.V. v. Ben-Menachem, No. 06-CV-3917, 2008 WL 64005, at *15 (S.D.N.Y. Jan. 3, 2008) ("[T]he Court concludes that standard statutory damages in the amount of $50,000 for each of Plaintiffs' nineteen Marks counterfeited by Defendants will be sufficient to meet the goals of the statute, including compensating the Plaintiffs and deterring future violations."); All-Star Mktg. Grp. LLC v. Media Brands Co. Ltd., 775 F. Supp. 3d 613, 625-26 (S.D.N.Y. 2011) (collecting cases awarding between $25,000 and $50,000 per mark).

Given the factors discussed above, a statutory damages award of $50,000 for each Defaulting Defendant is appropriate and consistent with awards in similar cases, where sales

information from each defendant is not available. See, e.g., Kelly Toy Holdings, LLC v. Baoding Mi Xiaomei Trading Co., Ltd., No. 21-CV-6029 (LGS) (SLC), 2022 WL 6246622, at *11 (S.D.N.Y. July 18, 2022), report and recommendation adopted by, 2022 WL 4298730 (S.D.N.Y. Sept. 19, 2022) (awarding $50,000 against each defaulting defendant counterfeiter where there was no information regarding each defendant's sales figures); Kelly Toys Holdings, LLC v. alialialiLL Store, No. 21-CV-8434 (AKH) (RWL), 2022 WL 1948311, at *10, 16 (S.D.N.Y. May 19, 2022), report and recommendation adopted by, 606 F. Supp. 3d 32 (S.D.N.Y. June 9, 2022) (recommending award of $50,000 per defaulting defendant for infringement on Kelly Toys' marks where there was no information regarding each defendant's sales figures); accord Kelly Toys Holdings LLC, 2022 WL 2801077, at *6-8; Spin Master Ltd. v. Alan Yuan's Store, 325 F. Supp. 3d 413, 426 (S.D.N.Y. 2018) (awarding $50,000 per defendant for infringement of Plaintiff's marks where the court could only determine that "each defendant sold at least one infringing product"). Accordingly, I respectfully recommend that Qlay be awarded statutory damages in the amount of $50,000 for each of the 60 Defaulting Defendants, for a total statutory damages award of $3,000,000.00.

       2.  Post-Judgment Interest

Finally, Qlay seeks post-judgment interest on any damages award. ECF No. 47 at ¶¶ 6-7. "Post-judgment interest is awarded on any money judgment recovered in a civil case." Alan Yuan's Store, 325 F. Supp. 3d at 426 (citing 28 U.S.C. § 1961). Post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, . . . for the calendar week preceding[] the date of judgment." 28 U.S.C. § 1961(a). Accordingly, I respectfully recommend that Qlay be awarded post-judgment

interest in an amount to be determined according to the statutory formula set forth in 28 U.S.C. § 1961.

## <u>CONCLUSION</u>

For the reasons set forth above, I respectfully recommend that judgment be entered in favor of Qlay on Counts I and II of the complaint. I further recommend that Qlay be awarded statutory damages of $50,000 against each Defaulting Defendant, plus post-judgment interest.

DATED:    New York, New York
         October 16, 2024

_____
VALERIE FIGUEREDO
United States Magistrate Judge

\*                    \*                    \*

**PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. <u>See also</u> Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Jennifer L. Rochon. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).**